IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01761-CMA-MJW

PHILIP WHITE,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER;
ROBERT WYCKOFF, individually and in his official capacity;
KYLLION CHAFIN, individually and in his official capacity;
KRISTY GARCIA, individually and in her official capacity;
GREYHOUND LINES, INC.;
CODE-3 PROTECTION & SECURITY LLC; and
DANIEL BURKE,

    Defendants.

## PLAINTIFF'S FIRST AMENDED COMPLAINT & JURY DEMAND

    Plaintiff, Philip White, by and through his attorneys, Darold W. Killmer, Mari Newman, and Tiffany J. Drahota of KILLMER, LANE & NEWMAN, LLP, hereby alleges for his First Amended Complaint and Jury Demand as follows:

### I. INTRODUCTION

    1.    On May 22, 2012, Plaintiff Philip White, a blind 77-year-old man, arrived at Greyhound Lines Inc. ("Greyhound") located at 1055 19th Street, Denver, Colorado 80202. Mr. White intended to take the 12:15 p.m. bus from Denver to Vail, Colorado.

    2.    When Mr. White was informed that there were no available tickets for the 12:15 p.m. bus, he was told by the ticket cashier that he could wait at the Greyhound terminal and see if there were any cancellations for the 12:15 p.m. bus.

    3.    Mr. White asked to speak with the manager of Greyhound, and during the course of his conversation he was again instructed that he could wait at the Greyhound station.

    4.    Thereafter, Code-3 Protection & Security ("Code-3") Officer Defendant Daniel Burke informed Mr. White that he had to leave the Greyhound station. Unbeknownst to Mr.

White, Defendant Burke also called the Denver Police Department and informed the police department that Mr. White was trespassing.

5.     Denver Police Officer Defendant Kyllion Chafin arrived at Greyhound to assist Defendant Burke.  When Mr. White asked to touch Defendant Chafin's badge to confirm that he was a police officer (since Mr. White is blind), Defendant Burke grabbed Mr. White's cane from him and Defendants Burke and Chafin wrenched Mr. White's arms behind his back, propelled him forward, and slammed his head into the ticket counter causing him to suffer a laceration and contusion to his head.

6.     Although Mr. White was not resisting and was without his cane, he was unlawfully handcuffed and escorted out of the station by Defendants Chafin and Burke, and Denver Police Officer Kristy Garcia, who had just arrived on scene to assist.

7.     Thereafter, Mr. White was unlawfully imprisoned and taken to jail.

8.     When Mr. White repeatedly complained that his handcuffs were too tight and that he was concerned that damage to his wrists and hands might make it where he would never be able to read Braille again, the Defendants, including Sergeant Robert Wyckoff of the Denver Police Department, mocked him and conspired to charge Mr. White with baseless criminal charges, which he was forced to defend.

9.     Ultimately, Mr. White's criminal charges were dismissed, and he brings this lawsuit as a result of the serious injuries, damages, and losses he sustained at Greyhound on May 22, 2012 and thereafter.

## II. JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter pursuant to C.R.S. § 13-1-124, Title 42 U.S.C. §§ 1983 and 1985, and other applicable law.

11.     Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c), in that all of the events alleged herein occurred within the City and County of Denver.

## III. PARTIES

12.     At all times relevant to the subject matter of this litigation, Plaintiff Philip A. White was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

13.     Defendant City and County of Denver ("Denver") is a Colorado municipal corporation.  Denver's Department of Safety is responsible for the oversight, supervision, and training of the Denver Police Department, the Denver County Jail, and the Van Cise-Simonet Detention Center.

2

14. Defendant Greyhound Lines, Inc. ("Greyhound") is a corporation with its corporate office in Dallas, Texas, and an office located at 1055 19th Street, Denver, Colorado 80202.

15. Defendant Code-3 Protection & Security LLC ("Code-3") is a limited liability company with its principal office located at 6979 Fairway Vistas Rd., Littleton, Colorado 80125.

16. At all times relevant to the subject matter of this litigation, Defendant Robert Wyckoff was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as a law enforcement officer with the Denver Police Department.

17. At all times relevant to the subject matter of this litigation, Defendant Kyllion Chafin was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as a law enforcement officer with the Denver Police Department.

18. At all times relevant to the subject matter of this litigation, Defendant Kristy Garcia was a citizen of the United States and a resident of Colorado and was acting under color of state law in her capacity as a law enforcement officer with the Denver Police Department.

19. At all times relevant to the subject matter of this litigation, Defendant Daniel Burke was a citizen of the United States and a resident of Colorado and was employed as a Security Officer for Code-3. His conduct as described herein was engaged in under color of state law.

### III. FACTUAL ALLEGATIONS

20. Philip Albert White is a 77-year-old retired public school administrator who holds Bachelors Degrees in history, economics, and political science, and a Master's Degree in education.

21. Mr. White worked as a public school administrator for more than thirty-years and coached wrestling prior to retiring to Eagle, Colorado.

22. Mr. White enjoys skiing, hiking, swimming, going to the theater, and reading Braille.

23. Mr. White is the single father of two children, and lost his eye sight in an accident when he was 11-years-old.

24. Mr. White utilizes a cane to assist him with his mobility.

25. On May 22, 2012, Mr. White arrived at the Greyhound station located at 1055 19th Street in Denver, Colorado intending to take the 12:15 p.m. bus to Vail, Colorado.

26. Once in Vail, Mr. White was scheduled to take the Paratransit ride to his home in Eagle, Colorado.

27. Because Mr. White had to schedule his Paratransit ride 24-hours in advance, it was imperative that he arrive in Vail prior to 4:00 p.m.

28. When Mr. White arrived at the Denver Greyhound bus station, he was informed that there were no seats available for the 12:15 p.m. bus.

29. Mr. White began explaining his dilemma to the Greyhound ticket cashier, informing her that if he did not make it to Vail before 4:00 p.m., he would be stranded in Vail for the night.

30. After explaining his situation to the Greyhound cashier, the cashier told Mr. White that he could wait at the Greyhound station and see if there were any cancellations for the 12:15 p.m. bus.

31. Mr. White then asked if he could speak to the manager to discuss any additional options he may have, because it was imperative that he arrive in Vail prior to 4:00 p.m.

32. The Greyhound manager agreed to speak with Mr. White, and Mr. White was asked to move to the right side of the counter so that the cashier could continue selling tickets to other patrons.

33. Mr. White stepped to the side as instructed and began explaining his situation for the second time.

34. Mr. White was again advised, this time by the Greyhound manager, that he could wait at the Greyhound station and see if there were any cancellations for the 12:15 p.m. bus.

35. While the Greyhound manager was discussing Mr. White's options, Defendant Burke interrupted Mr. White and stated loudly that Mr. White was trespassing and that he needed to leave.

36. Mr. White told Defendant Burke that he wanted to finish his conversation with the manager, but Defendant Burke advised him that the manager left and did not want to speak with Mr. White any longer.

37. Defendant Burke continued to harass and threaten Mr. White, telling him that he needed to leave or else he would be forced to leave.

38. Without informing Mr. White that he was calling the police, Defendant Burke called 911 claiming that Mr. White was trespassing.

39. Around the same time, Mr. White informed Defendant Burke that he was going to call the police to see if he had to leave the Greyhound station, having been repeatedly threatened by Mr. Burke.

40. Mr. White called 911 and explained the situation to the dispatcher who answered the phone.

41. The dispatcher told Mr. White that someone from the Denver Police Department ("DPD") could come to the Greyhound station and observe the discussion.

42. During his discussion with the dispatcher, Defendant Officer Chafin interrupted Mr. White and told him that he had to leave the Greyhound station.

43. Mr. White asked to "see" Defendant Chafin's badge in order to verify that he was a Denver police officer.

44. Defendant Chafin sarcastically responded, "How can you see my badge if you're blind?"

45. Mr. White explained that what he meant was that he wanted to touch Defendant Chafin's badge to confirm he was indeed a police officer. Defendant Chafin refused stating, "You're not touching me." This caused Mr. White uncertainty as to whether Defendant Chafin was actually a police officer or not.

46. Defendant Burke then began explaining to Defendant Chafin that Mr. White was trespassing.

47. Upon hearing this, Mr. White attempted to explain that he was not trespassing because he had permission from the Greyhound cashier and manager to wait at the station to see if there were any ticket cancellations for the 12:15 p.m. bus.

48. While Mr. White was explaining that he had permission to wait at Greyhound bus station, Mr. White's cane was pulled away from him by one or both of the Defendants, and Defendants Burke and Chafin wrenched Mr. White's arms behind his back, propelled him forward, and slammed his head into the ticket counter.

49. Significant portions of these events were captured on security surveillance video.

50. Although he was not resisting and was without his cane, Mr. White was handcuffed and escorted out of the station by Defendant Chafin and Defendant Garcia, who had just arrived on scene to assist.

51. Mr. White was then forced to sit on the ground at the Greyhound station for approximately one hour.

52. During that time, paramedics arrived to treat Mr. White's bleeding head.

5

53.     Some of Mr. White's injuries can be seen in the following photographs:





54.     Mr. White immediately began telling the paramedics that his handcuffs were too tight and that they were causing pain and damage to his wrists and hands.

55.     While Mr. White was being treated by the paramedics, Defendant Wyckoff of the DPD also arrived at the scene.

6

56.	Upon information and belief, Defendant Wyckoff was in charge of the scene and had supervisory and decision making authority at the scene on behalf of the City and County of Denver.  Upon information and belief, Defendant Wyckoff was also the supervisor of Defendants Chafin and Garcia.

57.	While Mr. White was in custody, Defendant Wyckoff began interrogating Mr. White without *Mirandizing* him or informing him that he was being videotaped.

58.	Defendant Wyckoff began filming and questioning Mr. White in an effort to get Mr. White to confess to potentially incriminating conduct and/or manufacture baseless charges against him.

59.	Like Defendant Chafin, Defendant Wyckoff began harassing and taunting Mr. White, stating things like, "I thought you said you were blind?"

60.	Even after Mr. White stated to Defendant Wyckoff that his handcuffs were too tight and that he was experiencing numbness in his hands, which could affect his ability to read Braille, Defendant Wyckoff ignored Mr. White's pleas and left Mr. White handcuffed.

61.	Approximately thirty-minutes later, Defendant Garcia removed Mr. White's handcuffs and immediately re-cuffed Mr. White with a second pair of handcuffs that were slightly less tight.

62.	While still sitting on the bus station ground, Mr. White asked Defendant Wyckoff if he could call the Paratransit ride in Eagle County to let them know that he would not be able to make his connecting ride to Eagle County.

63.	Defendant Wyckoff pretended to call the Paratransit ride stating loudly that he was a Denver Police Officer.

64.	Days later when Mr. White returned home, he learned that Defendant Wyckoff had only pretended to call the Paratransit ride, which could have jeopardized Mr. White's ability to utilize the service in the future.

65.	Eventually, Mr. White was pulled into the police vehicle by his belt, with his hands handcuffed behind his back.

66.	Mr. White was transported to either the Denver County Jail or the Van Cise-Simonet Detention Center, booked, and placed in a cell.

67.	While in the cell, Mr. White became very thirsty and asked for a glass of water.

68.	After approximately two hours he was given a glass of water.

69.	Throughout this entire time, Mr. White also had to use the restroom, but was unable to because he was handcuffed to a ring in the jail cell.

7

70. After approximately five hours, Mr. White's handcuffs were removed and he was taken by police vehicle to a different detention facility, processed, and placed in a cell.

71. Mr. White was not released from the jail until approximately midnight, and only after he paid $560.00 and was unlawfully charged with resistance (§ 38-32), disturbing the peace (§ 38-39(a)), and trespass (§ 38-115).

72. The baseless charges against Mr. White were subsequently dismissed.

73. As a result of the officers' unlawful actions, Mr. White sustained a cut to the right side of his head, bilateral numbness in his hands, and bilateral nerve damage, the full extent of which remains unknown.

74. On May 23, 2012, Mr. White was evaluated by Dr. Jonyean Pei, DO of St. Joseph's Emergency Medical Department.

75. Dr. Pei ordered x-rays of Mr. White's bilateral wrists and diagnosed Mr. White with a deep bruise to his forehead.

76. Dr. Pei also advised Mr. White that he may have sustained nerve damage to his hands.

77. Following the incident, Mr. White suffered from vertigo and bilateral numbness in his thumbs, little fingers, and ring fingers.

78. To date, Mr. White still experiences stiffness in his bilateral thumbs and numbness in his right hand, in addition to bilateral wrist injuries.

79. As a result of Mr. White's bilateral wrist, hand, and finger injuries, Mr. White's mobility was dramatically compromised and Mr. White struggled to read Braille for a significant period of time following the incident.

## IV. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – 4th Amendment Violation – Excessive Force)
### (Against Defendants City and County of Denver, Chafin, Garcia, and Wyckoff)

80. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

81. At all relevant times hereto, Defendants Chafin, Garcia, and Wyckoff were acting under the color of state law in their capacities as Denver law enforcement officers.

82. At the time when Mr. White was unlawfully apprehended and slammed head first into the ticket counter by Defendants Chafin and Burke, Mr. White had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from unreasonable seizure through excessive force.

83. Any reasonable law enforcement officer knew or should have known of this clearly established right.

84. Defendants Chafin, Garcia, and Wyckoff engaged in the use of force that was objectively unreasonable in light of the facts and circumstances confronting them, violating Mr. White's Fourth Amendment rights.

85. Defendants Chafin, Garcia, and Wyckoff's actions, as described above, were motivated by intent to harm Plaintiff.

86. Defendants Chafin, Garcia, and Wyckoff's actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Plaintiff's federally protected rights.

87. Defendants Chafin, Garcia, and Wyckoff unreasonably used excessive force against Mr. White, resulting in significant injuries to Mr. White.

88. When Mr. White informed Defendant Wyckoff that his handcuffs were too tight and he was concerned that he would not be able to read Braille, Defendant Wyckoff mocked Mr. White and refused to loosen the handcuffs.

89. The acts or omissions of Defendants Chafin, Garcia, and Wyckoff were the moving force behind and proximate cause of Mr. White's injuries.

90. The acts and omissions of Defendants Chafin, Garcia, and Wyckoff were engaged in pursuant to the custom, policy, and practice of the City and County of Denver and the Department of Safety, which encourages, condones, tolerates, and ratifies the use of excessive force by law enforcement officers in the City, and covers up such unconstitutional behavior in response to complaints or other notice.

91. Upon information and belief, Defendant Wyckoff was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Chafin and Garcia.

92. Through Defendant Wyckoff's own unlawful conduct and his written report which condones the conduct of Defendants Chafin and Garcia, and otherwise, Defendant Wyckoff, on behalf of the City and County of Denver, ratified the unconstitutional practices of Defendants Chafin and Garcia.

93. The acts or omissions of the individual Defendants and Defendant City and County of Denver caused Mr. White damages in that he suffered physical and mental pain during the assault that resulted in him suffering a head contusion, vertigo, dizziness and confusion, in

addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille, among other injuries, damages, and losses.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Fourth Amendment Violation – False Arrest / Unlawful Seizure)
### (Against Defendants City and County of Denver, Chafin, Garcia, and Wyckoff)

94.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

95.     At all relevant times hereto, Defendants Chafin, Garcia, and Wyckoff were acting under the color of state law in their capacities as Denver law enforcement officers.

96.     The actions of Defendants Chafin, Garcia, and Wyckoff as described herein, while acting under color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to freedom from unlawful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983 in that Plaintiff was unlawfully physically seized by Defendants Chafin, Garcia and Wyckoff without probable cause to believe he had committed any offense.

97.     Defendants Chafin, Garcia, and Wyckoff intentionally, knowingly, recklessly, and excessively subdued, restrained, and detained Plaintiff without any reasonable justification or probable cause.

98.     Defendants Chafin, Garcia, and Wyckoff failed to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime had been committed at all before invoking the power of the warrantless detention of Plaintiff.

99.     Defendants Chafin, Garcia, and Wyckoff had no facts and circumstances within their knowledge to warrant them to believe that Plaintiff had committed an offense.

100.    While Mr. White was in custody, Defendant Wyckoff began interrogating Mr. White without *Mirandizing* him or informing him that he was being videotaped.

101.    As Mr. White answered Defendant Wyckoff's questions, he provided sufficient information for Defendant Wyckoff to reasonably believe that Mr. White had not committed any crime. Notwithstanding this exculpatory information, Defendant Wyckoff forced Mr. White to remain handcuffed and eventually, to be put in jail.

102.    Defendants Chafin, Garcia, and Wyckoff are not entitled to qualified immunity for the complained of conduct. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable law enforcement knew or should have known.

103.    As a direct result of Defendants Chafin, Garcia, and Wyckoff's unlawful actions as described above, Plaintiff suffered actual physical, emotional, and economic injuries in an amount to be proven at trial.

104. The acts and omissions of Defendants Chafin, Garcia, and Wyckoff were engaged in pursuant to the custom, policy, and practice of the City and County of Denver and its Department of Safety, which encourages, condones, tolerates, and ratifies the unlawful seizure and/or false arrest and use of excessive force by law enforcement officers in the City and the cover-up of such unconstitutional conduct in response to complaints or other notice.

105. Upon information and belief, Defendant Wyckoff was the employee with the final policymaking authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Chafin and Garcia.

106. Through Defendant Wyckoff's own unlawful conduct and his written report which condones the conduct of Defendants Chafin and Garcia, and otherwise, Defendant Wyckoff, on behalf of the City and County of Denver, ratified the unconstitutional practices of Defendants Chafin and Garcia.

107. The acts or omissions of the individual Defendants and Defendant City and County of Denver caused Mr. White damages in that he suffered physical and mental pain during the assault that resulted in him suffering a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille, among other injuries, damages, and losses.

**THIRD CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 – Failure to Train or Supervise, Informal Custom, & Ratification by Final Policymaker)**
**(Against Defendant City and County of Denver and Defendant Wyckoff)**

108. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

109. The unlawful conduct of Defendants Chafin and Garcia, as set forth in detail herein, amounts to an informal custom and widespread practice, although not authorized by written law or express municipal policy, so permanent and well settled as to constitute a custom or usage with the force of law.

110. Upon information and belief, Defendant Wyckoff was the employee with the final policymaking and supervisory authority on the scene, and had authority over his subordinate law enforcement officers, Defendants Chafin and Garcia.

111. Through Defendant Wyckoff's own unlawful conduct and his written report which condones the conduct of Defendants Chafin and Garcia, Defendant Wyckoff, on behalf of the City and County of Denver, ratified the unconstitutional practices of Defendants Chafin and Garcia.

112. Defendant City and County of Denver and Defendant Wyckoff failed to properly train and supervise its or his employees to avoid the use of excessive force, false arrest, or unlawful seizure.

113. Defendant City and County of Denver and Defendant Wyckoff knew, or should have known, that its or his employees would fail to use reasonable force, would fail to reasonably handcuff Mr. White, would fail to loosen Mr. White's handcuffs, and would unlawfully seize, arrest, and jail Mr. White, violating Mr. White's constitutional rights.

114. Defendant City and County of Denver and Defendant Wyckoff were deliberately indifferent to the constitutional rights of Mr. White, knowing that dangerous consequences could be suffered by Mr. White in failing to properly train and supervise its or his employees.

115. Defendant City and County of Denver and Defendant Wyckoff could have and should have pursued reasonable methods for the training and supervising of such employees, but failed to do so.

116. Defendant City and County of Denver's policies, customs, or practices in failing to properly train and supervise its employees were the moving force and proximate cause of the violation to Mr. White's constitutional rights.

117. The custom, policy, and practice of the City and County of Denver and the Department of Safety of encouraging, condoning, tolerating, and ratifying the use of excessive by law enforcement officers and the unlawful seizure and false arrest of citizens, as described herein, and the subsequent cover-ups of such constitutional violations, were the moving force behind and proximate cause of the violation to Mr. White's constitutional rights.

118. The acts or omissions of Defendant City and County of Denver and Defendant Wyckoff caused Mr. White damages in that he suffered physical and mental pain during the assault that resulted in him suffering a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille, among other injuries, damages, and losses.

119. The actions of Defendant City and County of Denver and Defendant Wyckoff as described herein deprived Mr. White of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

**FOURTH CLAIM FOR RELIEF**
**(42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights)**
**(Against All Defendants)**

120. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

121. Defendant City and County of Denver, Defendants Wyckoff, Chafin, and Garcia, and Defendants Burke, Code-3, and Greyhound Lines, Inc. conspired, combined, and agreed with other individuals and institutions for the purpose of impeding, hindering, obstructing, or defeating the due course of justice, with intent to deny Mr. White with his constitutional rights and/or equal privileges and immunities under laws.

122.	Defendant City and County of Denver and Defendants Wyckoff, Chafin, and Garcia, and other law enforcement officers in the Denver Department of Safety, have an understanding and implicit agreement that the City will not aggressively enforce policies which purport to prohibit the use of excessive force, unlawful arrest, or unlawful seizure and other violations of constitutional rights of people with whom they interact.  This agreement between the City and its individual law enforcement officers to allow such unconstitutional behavior on the part of its law enforcement officers despite explicit policies, regulations, and laws prohibiting such conduct is supported and furthered by Denver's Mayor, Director of Public Safety, City Council, Office of Independent Monitor, the "Victim's Advocate" of the City of Denver, and the Denver District Attorney's Office, as well as by other law enforcement officers.

123.	The actions of all Defendants as described herein deprived Mr. White of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages, including but not limited to severe emotional distress and pain and suffering, a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille, among other injuries, damages, and losses.

## FIFTH CLAIM FOR RELIEF
### Assault
**(Against Defendants Greyhound Lines, Inc., Code-3, and Burke)**

124.	Plaintiff hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

125.	By taunting Mr. White, grabbing his cane, and physically assaulting him, Defendants Burke and Chafin intended to cause an offensive or harmful physical contact with Mr. White, or intended to place Mr. White in apprehension of such conduct.

126.	Defendants Burke and Chafin placed Mr. White in apprehension of immediate physical contact when, as described more fully herein, Defendants Burke and Chafin persisted in taunting Mr. White, grabbing his cane, and physically assaulting him by grabbing his arm and forcing him head first into the ticket counter.

127.	Defendant Burke and Chafin's contact with Mr. White was harmful and/or offensive and caused Mr. White substantial injuries, damages, and losses, including but not limited to severe emotional distress and pain and suffering, including but not limited a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille.

128.	Defendant Burke was at all times acting within the course and scope of his employment or agency with Defendant Code-3.  Defendant Code-3 is liable for the acts and omissions of its authorized agents for the damages caused there from. Defendant Greyhound Lines, Inc. is also liable for the acts and omissions of its authorized or contracting agents for the damages caused there from.

## SIXTH CLAIM FOR RELIEF
### Battery
### (Against Defendants Greyhound Lines, Inc., Code-3, and Burke)

129. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

130. Defendant Burke and Chafin's conduct, as described herein, resulted in physical contact with Mr. White. Such contact was not consented to by Mr. White. The unwanted and uninvited physical contact included Defendant Burke and Chafin's physical assault of Mr. White when both Defendants Burke and Chafin grabbed Mr. White's cane and both Defendants Burke and Chafin grabbed Mr. White's person and threw him face first into the ticket counter causing Mr. White to suffer a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille, among other injuries, damages, and losses.

131. Defendants Burke and Chafin intended to make harmful or offensive physical contact with Mr. White when Defendant Burke grabbed Mr. White's cane and then Defendants Burke and Chafin grabbed Mr. White's person and shoved him face first into the ticket counter.

132. Defendants Burke and Chafin's contact with Mr. White was harmful and/or offensive and caused Mr. White substantial injuries, damages, and losses, including severe emotional distress and pain and suffering, including but not limited a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille.

133. Defendant Burke was at all times acting within the course and scope of his employment or agency with Defendant Code-3. Defendant Code-3 is liable for the acts and omissions of its authorized agents for the damages caused there from. Defendant Greyhound Lines, Inc. is liable for the acts and omissions of its authorized or contracting agents for the damages caused there from.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress/Outrageous Conduct
### (Against Defendants Greyhound Lines, Inc., Code-3, and Burke)

134. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

135. The individual Defendants' behavior – including stealing Mr. White's cane, grabbing him, shoving him head first into the ticket counter, unlawfully arresting and seizing him, videotaping him, and taunting him because he tried to wait around for the 12:15 p.m. bus – is so outrageous and so extreme that reasonable members of the community would regard such behavior as atrocious, and was done with the intent of causing Mr. White severe emotional distress.

136. The individual Defendants knew or should have known that their actions would cause Mr. White severe emotional distress.

137. Defendant Burke's refusal to acknowledge the impropriety of the unlawful conduct essentially sanctioned the atrocious, outrageous, and unlawful conduct.

138. Defendants' described acts were utterly intolerable, and would lead a reasonable member of the community to conclude that their conduct was extreme or outrageous.

139. As a result of Defendants' conduct, Mr. White has suffered actual economic damages and has suffered other injuries, damages, and losses, including but not limited to severe emotional distress and pain and suffering, including but not limited a head contusion, vertigo, dizziness and confusion, in addition to bilateral pain to his hands, wrists, and fingers, difficulty ambulating and difficulty reading Braille.

140. Code-3 is liable for the tortious conduct of Defendant Burke, who was at all times acting within the course and scope of his agency with Defendant Code-3.

141. Defendant Greyhound Lines, Inc. is liable for the acts and omissions of its authorized or contracting agents for the damages caused there from.

## EIGHTH CLAIM FOR RELIEF
### False Imprisonment
**(Against Defendants Greyhound Lines, Inc., Code-3, and Burke)**

142. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

143. Defendant Burke intended to restrict Mr. White's freedom of movement and did restrict his freedom of movement when Defendant Burke stole Mr. White's cane, and Defendants Burke and Chafin grabbed Mr. White and shoved him head first into the ticket counter and then Defendants Burke, Chafin, and Garcia unlawfully seized and falsely arrested Mr. White, and Defendant Wyckoff refused to release Mr. White.

144. Without his cane, Mr. White was aware that his movement was restricted. While handcuffed and detained, Mr. White was aware that his movement was restricted.

145. The restrictions in his ability to move were without his consent, and caused significant injuries, damages, and losses.

146. Code-3 is liable for the tortious conduct of Defendant Burke, who was at all times acting within the course and scope of his agency with Defendant Code-3.

147. Defendant Greyhound Lines, Inc. is liable for the acts and omissions of its authorized or contracting agents for the damages caused there from.

**WHEREFORE**, Plaintiff Philip White respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to, the following:

a. Compensatory damages, including but not limited to those for emotional distress, pain and suffering;

b. Actual economic damages and consequential damages arising out of Defendants' conduct;

c. Declaratory relief and other appropriate equitable relief;

d. Punitive damages as allowed by the law;

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorneys fees and costs; and

g. Such further relief as justice requires.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

DATED this 17th day of July 2013.

**KILLMER, LANE & NEWMAN, LLP**

*s/ Darold W. Killmer*
_____
Darold W. Killmer, #16056
Mari Newman, #30192
Tiffany J. Drahota, #42868
1543 Champa Street, Suite 400
Denver, Colorado  80202
(303) 571-1000 phone
(303) 571-1001 fax
dkillmer@kln-law.com
mnewman@kln-law.com
tdrahota@kln-law.com

*Counsel for Plaintiff*