IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01761-CMA-MJW

PHILIP WHITE,

Plaintiff,

v.

CITY AND COUNTY OF DENVER,
ROBERT WYCOFF, in his individual and official capacity,
KYLLION CHAFIN, in his individual and official capacity,
KRISTY GARCIA, in her individual and official capacity,
GREYHOUND LINES, INC.,
CODE-3 PROTECTION & SECURITY LLC, and
DANIEL BURKE,

Defendants.

## RECOMMENDATION ON
## DENVER DEFENDANTS' MOTION TO DISMISS (Docket No. 62)
## and
## DEFENDANT GREYHOUND LINES, INC.'S MOTION TO DISMISS PLAINTIFF'S
## SECOND AMENDED COMPLAINT (Docket No. 69)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 8) issued by Judge Christine M. Arguello on July 9, 2013.

**FACTUAL BACKGROUND**

Plaintiff Philip White makes the following allegations in his Second Amended Complaint (Docket No. 61) (hereinafter "Complaint"). Plaintiff is a blind 77-year-old man. On May 22, 2012, plaintiff arrived at defendant Greyhound Lines, Inc. ("Greyhound") intending to take the 12:15 p.m. bus from Denver to Vail. Plaintiff was informed that there were no tickets available for the 12:15 p.m. bus. The ticket cashier

suggested that plaintiff wait in the terminal to see if there were any cancellations. Plaintiff asked to speak to a manager and was again told to wait in the terminal.

Sometime after, defendant Daniel Burke, an employee of defendant Code-3 Protection & Security LLC ("Code-3"), told plaintiff he had to leave the Greyhound station. Burke had also called the Denver Police Department and informed them that plaintiff was trespassing.

Defendant Kyllion Chafin, a Denver Police Officer, arrived at the scene in response to Burke's call. Plaintiff asked to touch Chafin's badge to confirm he was a police officer. Chafin refused, and shortly thereafter, Burke and Chafin "wrenched [plaintiff's] arms behind his back, propelled him forward, and slammed his head into the ticket counter causing him to suffer a laceration and contusion to his head." Plaintiff was then handcuffed by Chafin and defendant Kristy Garcia, another Denver Police Officer who had just arrived at the scene.

At some point shortly thereafter, plaintiff complained that his handcuffs were too tight and that he was concerned that damage to his wrists and hands would make it where he would never be able to read Braille again. Approximately thirty minutes later, Garcia re-cuffed plaintiff with a second pair of handcuffs which were slightly less tight. Plaintiff was eventually escorted out of the Greyhound station and taken to jail.

Defendants, including defendant Robert Wycoff of the Denver Police Department, "mocked [plaintiff] and conspired to charge [him] with baseless criminal charges." Plaintiff was released from jail around midnight. Ultimately, the criminal charges against plaintiff (resistance, disturbing the peace, and trespass) were dismissed.

3

Plaintiff makes nine claims for relief in his Second Amended Complaint (Docket No. 61): (1) excessive force in violation of the Fourth Amendment against the Denver Defendants (the City and County of Denver, Wyckoff, Chafin, and Garcia); (2) false arrest/unlawful seizure in violation of the Fourth Amendment against the Denver Defendants; (3) failure to train or supervise, informal custom, and ratification against the City and County of Denver and Wyckoff; (4) conspiracy to interfere with civil rights against all defendants; (5) assault against Greyhound, Code-3, and Burke; (6) battery against Greyhound, Code-3, and Burke; (7) intentional infliction of emotion distress/outrageous conduct against Greyhound, Code-3, and Burke; (8) false imprisonment against Greyhound, Code-3, and Burke; and (9) negligence against Greyhound and Code-3.

**PENDING MOTIONS**

Now before the court for a report and recommendation is Denver Defendant's Motion to Dismiss (Docket No. 62) and Defendant Greyhound Line, Inc's Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 69). The court has carefully considered the Second Amended Complaint (Docket No. 61), the subject motions (Docket Nos. 62 & 69), plaintiff's responses (Docket Nos. 71 & 78), and defendants' replies (Docket Nos. 80 & 84). In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction. See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) take two forms. First, a party may attack the facial sufficiency of the complaint, in which case the court must accept the allegations of the complaint as true. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. See id. at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. See id.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the

remaining, factual allegations plausibly suggest the defendant is liable." Id.

**ANALYSIS**

The court will address plaintiff's claims in turn and discuss the arguments put forth in the subject motions when appropriate.

**I. Claim One**

Claim One asserts violation of plaintiff's Fourth Amendment right to be free from use of excessive force.  Claim One is brought against the City and County of Denver, Wyckoff, Chafin, and Garcia.

First, the City and County of Denver "may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978).  Accordingly, to the extent Claim One is brought against the City and County of Denver, it should be dismissed.

Second, the Denver Defendants argue that Claim One should be dismissed against Chafin and Garcia for failure to state a claim upon which relief may be granted. Plaintiff's Complaint does not allege that Garcia was involved in Burke and Chafin's actions that resulted in plaintiff's head hitting the ticket counter.  Accordingly, the only excessive force alleged to have involved Garcia relates the plaintiff's handcuffing.

"The Fourth Amendment protects the right of individuals to be free from improper arrest and detention." Buck v. City of Albuquerque, 549 F.3d 1269, 1281 (10th Cir. 2008); see U.S. Const. amend. IV ("The right of people to be secure in their persons . . . against unreasonable seizures . . . shall not be violated.").  The Fourth Amendment also

prohibits seizures which are unreasonable because excessive force was used to effectuate them. See Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)).

"Excessive force claims under the Fourth Amendment are governed by an 'objective reasonableness' standard." Morris v. Noe, 672 F.3d 1185, 1195 (10th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386 (1989)). In the context of a handcuffing, a plaintiff must show both that the force used was more than reasonably necessary, and that some actual injury was caused by the handcuffing that is not de minimis. Fisher v. City of Las Cruces, 584 F.3d 888, 897 (10th Cir. 2009). "[U]nduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007).

Plaintiff alleges he was "handcuffed and escorted out of the station by [Chafin] and [Garcia], who had just arrived on the scene to assist." Docket No. 61 at 8, ¶ 51. Plaintiff alleges that as a result of the handcuffing, he suffered bilateral wrist, hand, and finger injuries, which reduced his mobility and caused him difficulty reading Braille. Docket No. 61 at 11, ¶ 80. Plaintiff, however, does not allege that Chafin or Garcia ignored his complaints, nor does he allege that Chafin or Garcia were otherwise made aware that the handcuffs were too tight. Rather, plaintiff alleges that he was ignored after he informed the paramedics and Wyckoff of the pain caused by the handcuffs. Docket No. 61 at 9, ¶ 55; Docket No. 61 at 10, ¶ 61.

Accordingly, the court finds that plaintiff has failed to state a claim for excessive

8

force against Garcia, and to the extent Claim One is brought against Garcia, it should be dismissed. Furthermore, the court finds that plaintiff has failed to state a claim for excessive force against Chafin, as related to plaintiff's handcuffing. Accordingly, Claim One should be dismissed as against Chafin, but only to the extent it involves plaintiff's handcuffing.

**II. Claim Two**

Claim Two asserts violation of plaintiff's Fourth Amendment right to be free from false arrest/unlawful seizure. Claim Two is brought against the City and County of Denver, Wyckoff, Chafin, and Garcia.

"A warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe that the person arrested has committed an offense." Tanberg v. Sholtis, 401 F.3d 1151, 1159 (10th Cir. 2005) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 322 (2001)). "Probable cause exists to arrest if 'facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" Id. at 1159 (quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)).

The Denver Defendants argue that plaintiff has failed to state a claim for false arrest. Specifically, they argue there was probable cause to arrest plaintiff for trespassing, and point to the following allegations contained in plaintiff's Complaint for support: (1) plaintiff admits that he was told to leave a private building by Burke and refused (Docket No. 61 at 6, ¶ 35-39); (2) Burke told Chafin that plaintiff was

9

trespassing (Docket No. 61 at 7, ¶ 47); and (3) plaintiff refused to comply with Chafin's subsequent order to leave the premises (Docket No. 61 at 7, ¶ 48).

In response, plaintiff points to the fact that he was given permission by two Greyhound employees to wait at the station. As such, plaintiff argues no objectively reasonable officer could conclude that plaintiff was trespassing, since such a conclusion would require a showing that plaintiff was not authorized to be on the premises. In other words, plaintiff argues there was dispute among the two Greyhound employees and Burke as to whether plaintiff was authorized to be on the premises.

The allegations in plaintiff's Complaint may or may not support his contention that, at the time he was arrested, there was an ongoing dispute as to whether plaintiff had permission to be on the premises. Whether there was an actual dispute among the employees is immaterial. Rather, the court must look at the facts and circumstances within the officer's knowledge at the time the arrest was made.

Plaintiff alleges that after being told there were no tickets available, the cashier told plaintiff he could wait in the station and see if there were any cancellations. Docket No. 61 at 5, ¶ 30. Plaintiff then asked to speak to the manager, who again told plaintiff he could wait in the station. Docket No. 61 at 6, ¶ 34. While plaintiff was speaking to the manager, Burke arrived and informed plaintiff he was trespassing. Docket No. 61 at 6, ¶ 35. The manager then left the area. Docket No. 61 at 6, ¶ 36. Sometime later, Chafin arrived at the station and eventually arrested plaintiff. Docket No. 61 at 7, ¶ 42.

The only allegations plaintiff makes as to Chafin's knowledge at the time plaintiff was arrested are: (1) that Burke explicitly told Chafin that plaintiff was trespassing (Docket No. 61 at 6, ¶ 47); and (2) that plaintiff told Chafin that he had permission from

the two Greyhound employees to remain in the station (Docket No. 61 at 7, ¶ 48). Plaintiff does not allege that, after Burke told Chafin plaintiff was trespassing, anyone spoke up to contradict Burke. Accordingly, all Chafin knew at the time of the arrest was that plaintiff had, *at some time prior*, received permission to remain in the station, but *currently*, plaintiff did not have permission to remain in the station. Viewing these facts and circumstances in a light most favorable to plaintiff, the court finds that a reasonable officer would have concluded that plaintiff previously received permission to remain in the station, but that permission was withdrawn. See Denver Rev. Mun. Code § 38-115(a) (stating that it is unlawful for any person to remain upon the premises of another when consent to remain is withdrawn). As such, Burke had probable cause to arrest plaintiff for trespassing. Accordingly, the court finds that plaintiff has failed to state a claim for false arrest/unreasonable seizure and Claim Two should be dismissed in its entirety.

## III. Claim Three

Claim Three is a claim for failure to train or supervise, informal custom, and ratification by final policymaker. Claim Three is brought against the City and County of Denver and Wyckoff.

Without an underlying constitutional violation by a county employee, there can be no municipal liability based on a municipal policy or custom. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d

11

1255, 1264 (10th Cir. 2008) ("[W]ithout the predicate constitutional harm inflicted by an officer, no municipal liability exists."). Similarly, when there is no constitutional violation by a county employee, there can be no action for failure to train. See Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1447 (10th Cir. 1990).

Based on the court's findings in Sections I and II, *supra*, Claim Three should be dismissed to the extent it based on: (1) the excessive force claim against Garcia; (2) the excessive force claim against Chafin, as related to plaintiff's handcuffing; and (3) the unreasonable seizure/false arrest claim. As such, the remaining constitutional violation which form the basis for Claim Three is the excessive force claim against Chafin, as related to plaintiff's head hitting the counter.

The Denver Defendants argue that, if conclusory allegations are disregarded, plaintiff's Claim Three relies entirely on the conduct of the officers alone. As such, defendants contends Claim Three should be dismissed for failure to state a claim.

In general, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993). "In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-85 (1986); Butler, 992 F.2d at 1055 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [Monell] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

12

municipal policymaker.")).

Plaintiff alleges that "Wyckoff was the employee with the final policymaking and supervisory authority *on the scene*, and had authority over [Chafin]." Docket No. 61 at 16, ¶ 111 (emphasis added). Plaintiff further alleges that through Wyckoff's written report condoning Chafin's actions, Wyckoff ratified said actions. Docket No. 61 at 16, ¶ 112. These allegations are clearly insufficient to support a claim for municipal liability based on a single incident. Plaintiff does not allege that Wyckoff had the general authority to make policy decisions on behalf of the City and County of Denver and that a policy attributable to him caused the incident in question. Rather, plaintiff simply alleges that Wyckoff was the supervisor at the scene and wrote the report on the incident afterwards. This is plainly not sufficient to state a claim for municipal liability. As such, Claim Three should be dismissed to the extent it contends there was an informal custom or ratification.

As to the failure to train or supervise component of Claim Three, plaintiff's Complaint is completely devoid of any non-conclusory allegations in that regard. See Chambers v. Cooper, No. 13-cv-00393-REB-MEH, 2014 WL 561371, at *7 (Feb. 12, 2014 D. Colo.) (noting the plaintiff failed to allege any specific actions by the supervisor/trainer and failed to allege similar violations by untrained employees); Jones v. Lehmkuhl, No. 11-cv-02384-WYD-CBS, 2013 WL 6728951, at *15 (Dec. 20, 2013 D. Colo.) (noting there were "no well-pled facts that demonstrate specific deficiencies" in training); Bark v. Chacon, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) ("Mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not 'suffice to fasten liability on the city.'" (citation

omitted)); Mott v. Officer John Does I, No. 07-cv-00280-REB-CBS, 2008 WL 648993, at *5 (D. Colo. Mar. 4, 2008) ("Mr. Mott has not alleged when Officers John Doe I and II were trained or how the training was inadequate.").

Accordingly, the court finds that plaintiff has failed to state a claim failure to train or supervise, and considering the rest of the above analysis, Claim Three should be dismissed in its entirety.

## IV. Claim Four

Plaintiff has voluntarily abandoned Claim Four. See Docket No. 71 at 15. Accordingly, the court finds Claim Four should be dismissed.

## V. Claims Five, Six, Seven, Eight, and Nine

Claim Five (assault), Claim Six (battery), Seven (intentional infliction of emotional distress/outrageous conduct), and Claim Eight (false imprisonment) are each brought against Greyhound, Code-3, and Burke. Claim Nine (negligence) is brought against Greyhound and Code-3. Greyhound argues each of these claims must be dismissed against it due to plaintiff's failure to allege any facts to support his theory that Greyhound is vicariously liable for the actions of Burke.

Plaintiff concedes that Burke is an employee of Code-3, not Greyhound. See Docket No. 61 at 4, ¶ 19. It is well established that "the torts of an independent contractor are generally the sole responsibility of that independent contractor, i.e., there is no vicarious liability on the part of the employer." Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1360 (10th Cir. 1987) (quoting Williams v. Burns, 463 F. Supp. 1278, 1284 (D. Colo. 1979)). Plaintiff argues, however, that Greyhound is liable based on its principal-agent relationship with Burke. "A principal is vicariously liable for its agent's

14

acts committed within the scope of the agency." City of Aurora v. Colo. State Engineer, 105 P.3d 595, 622 (Colo. 2005); see also Branscum v. Am. Cmty. Mut. Ins. Co., 984 P.2d 675, 680 (Colo. App. 1999) ("[T]he acts performed or statements by an agent within the scope of real or apparent authority are binding on the principal regardless whether the principal has actual knowledge of the agent's act.").

Greyhound argues that plaintiff has failed to plead sufficient facts to demonstrate that Burke was acting within the scope of his agency during the incident in question. Throughout his Complaint, plaintiff alleges that Burke was acting with the scope of his agency. See, e.g., Docket No. 61 at 20, ¶ 129. However, beyond these conclusory statements, plaintiff offers almost no factual allegations which demonstrate that Burke was acting within the scope of his agency. Nowhere in his Complaint does plaintiff allege that Burke's actions were somehow authorized or directed by Greyhound. The only allegations that can possibly be construed to implicate the scope of agency are that Burke was on duty and on Greyhound's premises at the time of the incident. See Docket No. 61 at 6, ¶ 35. These allegations alone are plainly insufficient to demonstrate Burke was acting with the scope of his agency as to the torts alleged in Claims Five through Nine.

Recognizing the deficient nature of his Complaint, plaintiff urges the court to infer, from the various allegations describing Burke's actions, i.e., Docket No. No. 61 ¶ ¶ 35-38, 47-48, that Burke "was authorized to speak with Greyhound patrons, evaluate situations occurring within the scope of Greyhound's business and involving its patrons, and take action where it may be necessary." Docket No. 78 at 7. In essence, plaintiff argues that because Burke's actions took place while he was on duty, on Greyhound's

premises, and in front of Greyhound employees, it is reasonable to infer that these actions were impliedly authorized by Greyhound, and thus within the scope of Burke's agency.

The court does not find that such an inference is reasonable. Inferences drawn from factual allegations "must be more than speculation and conjecture." <u>Sunward Corp. v. Dun & Bradstreet, Inc.</u>, 811 F.2d 511, 521 (10th Cir. 1987) (citing <u>Galloway v. United States</u>, 319 U.S. 372 (1943)). Inferences must be based on the facts alleged; in other words, an inference "is reasonable where 'a probability' exists that a 'conclusion flows from the . . . facts.'" <u>United States v. Bowen</u>, 527 F.3d 1065, 1076 (10th Cir. 2008) (citation omitted).

The fact that Burke's actions took place while he was on duty, on Greyhound's premises, and in front of Greyhound employees, demonstrates nothing more than a sheer possibility that Greyhound authorized or directed his actions. Those allegations do nothing to cross the line from a possibility to plausibility that Burke was acting within his agency. The fact that an independent contractor is working at the principal's premises, and consequently in view of the principal's employees, is a common situation when the contractor is performing work which requires him to be physically present. This alone cannot be enough to demonstrate that the agent was acting within the scope of his agency. If it were, it would take nothing more than the agent to show up to work for the principal to become vicariously liable. Clearly a greater showing is required.

For the above reasons, the court finds that plaintiff has failed to plead facts sufficient to demonstrate that Greyhound is vicariously liable for the torts allegedly committed by Burke. Accordingly, Claims Five, Six, Seven, Eight, and Nine should be

dismissed as against Greyhound.  Since the court finds that all claims brought against Greyhound should be dismissed, Greyhound should be dismissed as a party to this matter.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Denver Defendant's Motion to Dismiss (Docket No. 62) be **GRANTED IN PART AND DENIED IN PART**.  The motion should be **GRANTED** insofar as Claim One should be dismissed with prejudice as against Garcia.  Claim One should also be dismissed with prejudice as against Chafin to the extent it involves plaintiff's handcuffing.  In addition, Claims Two, Three, and Four should be dismissed with prejudice in their entirety.  The motion should be **DENIED** in all other respects.  It is

**FURTHER RECOMMENDED** that Defendant Greyhound Line, Inc's Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 69) be **GRANTED**, and all claims against defendant Greyhound Lines, Inc. be dismissed with prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the**

17

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>,**

**91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  March 31, 2014                    <u>s/ Michael J. Watanabe    </u>
       Denver, Colorado                  Michael J. Watanabe
                                       United States Magistrate Judge

Case 1:13-cv-01761-CMA-MJW   Document 103   Filed 03/31/14   USDC Colorado   Page 17 of 17