**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01761-CMA-MJW

PHILIP WHITE,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,
ROBERT WYCOFF, in his individual and official capacity,
KYLLION CHAFIN, in his individual and official capacity,
KRISTY GARCIA, in her individual and official capacity,
CODE-3 PROTECTION & SECURITY LLC, and
DANIEL BURKE,

     Defendants.

---

**ORDER ADOPTING IN PART AND REJCTING IN PART MARCH 31, 2014
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

     This matter is before the Court on the March 31, 2014 Recommendation

of United States Magistrate Judge Michael J. Watanabe.  (Doc. # 103.)[1]  Judge

Watanabe recommended that Denver Defendants'[2] Motion to Dismiss (Doc. # 62) be

granted in part and denied in part.  Specifically, Judge Watanabe recommended that

---

[1] The Recommendation also addressed Defendant Greyhound Lines, Inc.'s Motion to Dismiss. (Doc. # 69.)  However, Plaintiff voluntarily dismissed Greyhound (Doc. # 129) and this Court denied its motion as moot (Doc. # 130).  Accordingly, the Court need not address Plaintiff's objections that concern allegations regarding Greyhound.

[2] Judge Watanabe and the parties refer to Defendants City and County of Denver, and Denver Police Officers Robert Wyckoff, Kyllion Chafin, and Kristy Garcia, collectively as "Denver Defendants."  As such, the Court will adopt this use of "Denver Defendants" throughout this Order.

Claim One be dismissed with prejudice against Defendants Garcia and Chafin to the

extent that it involves Plaintiff Philip White's handcuffing; Claims Two, Three, and Four

be dismissed with prejudice in their entirety; and the motion be denied in all other

respects.  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C.

§ 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Plaintiff filed a timely objection to the

Recommendation (Doc. # 109), to which Denver Defendants responded (Doc. # 110).

## I.   <u>LAW AND ANALYSIS</u>

### A.   STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter,

Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine *de novo* any part

of the magistrate judge's [recommended] disposition that has been properly objected

to."  In conducting its review, "[t]he district judge may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the

magistrate judge with instructions."  *Id.*  Following a *de novo* review, this Court finds that

Judge Watanabe's Recommendation should be adopted in part and rejected in part.

### B.   PLAINTIFF'S EXCESSIVE FORCE CLAIM AGAINST GARCIA

#### 1.   <u>Garcia's Use of Handcuffs</u>

Judge Watanabe recommended that the Court dismiss Plaintiff's excessive force

claim against Garcia for excessively tight handcuffing because Plaintiff "does not allege

that Chafin[3] or Garcia ignored his complaints, nor does he allege that Chafin or Garcia

---

[3] In his objection, Plaintiff clarifies that he does not allege an excessive force claim based on
tight handcuffs against Chafin.  (Doc. # 109 at 4.)  Instead, Plaintiff brings a claim for excessive

were otherwise made aware that the handcuffs were too tight."  (Doc. # 103 at 7.)

Judge Watanabe refused to infer from Garcia's presence at the scene and her

subsequent adjustment of Plaintiff's handcuffs that Garcia knew that Plaintiff's handcuffs

were excessively tight.  (*Id.*)

In his Second Amended Complaint Plaintiff alleges that "[a]lthough he was not

resisting and was without his cane, [he] was handcuffed and escorted out of the station

by Defendant Chafin and Defendant Garcia, who had just arrived on scene to assist."

(Doc. # 61 at 8.)  Plaintiff complained to the paramedics and Defendant Wyckoff that his

handcuffs were too tight.  (*Id.* at 9-10.)  "Approximately thirty-minutes later, Defendant

Garcia removed Mr. White's handcuffs and immediately re-cuffed [Plaintiff], still on the

floor, without his cane, and not resisting in any form, with a second pair of handcuffs

that were only slightly less tight."  (*Id.* at 10.)

"[I]n a handcuffing case 'to recover on an excessive force claim, a plaintiff must

show: (1) that the officers used greater force than would have been reasonably

necessary to effect a lawful seizure, and (2) some actual injury caused by the

unreasonable seizure that is not *de minimis*, be it physical or emotional.'"  *Fisher v. City

of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (quoting *Cortez v. McCauley*, 478

F.3d 1108, 1129 n. 25 (10th Cir. 2007)).  In order to determine when the use of

handcuffs as part of an arrest may constitute excessive force, the Tenth Circuit has

adopted the *Graham* factors, which include: "[1] the severity of the crime at issue, [2]

---

force against Chafin for "slamming [Plaintiff's] head into the countertop."  The Denver
Defendants have not moved to dismiss this claim.

whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Plaintiff contends that each of the three *Graham* factors weigh in his favor.  (Doc. # 109 at 5.)  The Court agrees. Trespassing is undoubtedly a minor misdemeanor.   As a blind man without a cane, Plaintiff did not pose an immediate threat to the officers', or anyone else's, safety. Finally, according to the allegations in the complaint, Plaintiff was not actively resisting arrest or attempting flight.  Thus, "force [wa]s least justified against . . . " Plaintiff in this situation.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007).

Even for arrestees who satisfy all of the *Graham* factors, "a small amount of force, like grabbing [a plaintiff] and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment."[4]  *Cortez*, 478 F.3d at 1128 (citations omitted).  Excessively tight handcuffing may go beyond this acceptable amount of force. *Id.* at 1129.  As Judge Watanabe observed, "unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."  *Id.* (citations omitted).  The "actual injury" requisite to support a claim of excessive force must be "not *de minimis*, be it physical or emotional."  *Id.*

---

[4] Plaintiff argues that Judge Watanabe improperly focused only on the excessive tightness of Plaintiff's handcuffs and failed to consider whether Garcia's initial use of handcuffs was unreasonable.  Because officers may use a small amount of force during the course of an arrest and Plaintiff's injury stems from the excessive tightness, the Court does not find it helpful to parse Garcia's use of handcuffs between the initial cuffing and the excessive tightness.  Rather, the Court examines the entire course of events.

Plaintiff has alleged that he suffered an actual injury because his handcuffs were too tight.  In *Cortez*, the Tenth Circuit determined that "red marks [on plaintiff's wrists] that were visible for days afterward" were insufficient to support an excessive force claim.  478 F.3d at 1129.  In contrast, Plaintiff alleges that the incident caused "stiffness in his bilateral thumbs and numbness in his right hand, in addition to bilateral wrist injuries," which caused him difficulty reading Braille.  (Doc. # 61 at 11.)  These injuries are more than *de minimis*.  *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008) ("[P]ermanent nerve injury in his wrists" supported plaintiff's excessive force claim).

Plaintiff argues that Garcia's use of handcuffs, presence at the scene, and the fact that she later loosened Plaintiff's handcuffs, is sufficient for this Court to infer that Garcia heard and initially ignored Plaintiff's complaints about the tightness of the handcuffs.  (Doc. # 109 at 5-6.)  Judge Watanabe declined this inference, determining that inference unreasonable based on Plaintiff's alleged facts.  (Doc. # 103 at 7.)  However, the Court believes that taking the allegations in the light most favorable to Plaintiff, this inference is reasonable.  Plaintiff alleges Garcia handcuffed him and escorted him out of the station, and that Garcia ultimately loosened Plaintiff's handcuffs.  Plaintiff specifically alleged that he protested the tightness and complained that he was experiencing numbness in his hands, which could impair his ability to read Braille.  (Doc. # 61 at 2, 9-10.)  Moreover, Plaintiff's blindness may have impaired his ability to specifically identify individuals standing in his vicinity during his complaints.  Plaintiff

remained cuffed for at least thirty minutes before Garcia loosened the cuffs.[5]   For the

purposes of a motion to dismiss, and particularly because Plaintiff alleges that Garcia

applied the handcuffs, it is reasonable to infer that Garcia was aware of Plaintiff's

complaints.  *See Cortez*, 478 F.3d at 1129.  Accordingly, Plaintiff has stated a claim for

excessive force against Garcia regarding the use of handcuffs.  As such, the Court must

determine whether Garcia is entitled to qualified immunity.

     2.   <u>Qualified Immunity</u>

     In response to Plaintiff's excessive force claim, Garcia contends that she is

entitled to qualified immunity.  "To secure the denial of qualified immunity, a plaintiff . . .

bears the burden of establishing" that (1) "a right had been violated"; and (2) "the right

was clearly established at the time of the alleged violation."[6]  *Fisher*, 584 F.3d at 893

(quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).  The Court has discretion in

deciding "which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand."  *Id.* at 893

(quoting *Pearson v. Callahan*, 555 U.S. 223, 230-31 (2009)); *see also Christensen v.*

*Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

---

[5] The Court is unclear whether more than thirty minutes elapsed between Plaintiff's initial complaint to the paramedics and Garcia's loosening of the handcuffs.  Plaintiff alleges that Garcia loosened his handcuffs thirty minutes after he complained to Wyckoff, which appears to be some time after Plaintiff complained to the paramedics.  (Doc. # 61 at 9-10.)

[6] The Court "uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally."  *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Thus, in order to overcome Garcia's qualified immunity, Plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. . . ."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

Plaintiff contends that his Fourth Amendment rights were violated when Garcia handcuffed him with excessive tightness.  (Doc. # 71 at 5-6.)  As discussed above, Plaintiff has alleged that Garcia was aware of Plaintiff's complaints, but did not loosen the handcuffs for at least thirty minutes.  Further, Garcia's use of handcuffs caused Plaintiff's actual injury.  Thus, the Court agrees that Garcia plausibly violated Plaintiff's right to be free from excessively tight handcuffs.  *See Cortez*, 478 F.3d at 1129; *Vondrak*, 535 F.3d at 1209.

Garcia argues that it was not clearly established that she violated Plaintiff's constitutional rights by placing him in tight handcuffs.  (Doc. # 110 at 7-8.)  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see Panagoulakos v. Yazzie*, 741 F.3d 1126, 1130 (10th Cir. 2013).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Martin*, 425 Fed. App'x 736, 743-44 (10th Cir. 2011) (quoting *al-Kidd*, 131 S.Ct. at 2083).

The Tenth Circuit's decision in *Vondrak* clearly established Plaintiff's right to be free of excessively tight handcuffing.  In *Vondrak*, the Tenth Circuit held that "at the time of Vondrak's arrest, the right to be free from unduly tight handcuffing was 'clearly established'—as were the contours of the right."  535 F.3d at 1209 (collecting cases).  Like in *Vondrak*, Plaintiff's handcuffs were excessively tight, the officers ignored his

complaints, and he suffered an "actual injury."  *See id.*  Thus, Garcia is not entitled to

qualified immunity on this claim.

### C.    PLAINTIFF'S FALSE ARREST CLAIM

Judge Watanabe recommended that the Court dismiss Plaintiff's false arrest

claim in its entirety.  Plaintiff alleged that a Greyhound manager told him he had

permission to wait in the station, but that Burke arrived and informed Plaintiff he was

trespassing.  The manager then left the area.  (Doc. # 103 at 9.)  Based on these

allegations, Judge Watanabe found that "a reasonable officer would have concluded

that Plaintiff previously received permission to remain in the station, but that permission

was withdrawn." (*Id.*)  Specifically, Judge Watanabe reasoned that

> Plaintiff does not allege that, after Burke told Chafin [that] Plaintiff was
> trespassing, anyone spoke up to contradict Burke.  Accordingly, all Chafin
> knew at the time of the arrest was that plaintiff had*, **at some time prior**,*
> received permission to remain in the station, but **currently**, Plaintiff did not
> have permission to remain in the station.

(Doc. # 103 at 10) (emphasis in original).  Plaintiff objects to Judge Watanabe's

recommendation on two grounds: (1) Judge Watanabe incorrectly examined his

allegations in the light most favorable to Defendants, rather than Plaintiff; and (2) Chafin

failed to conduct his own investigation before arresting Plaintiff.  (Doc. # 109 at 9-10.)

The Court agrees that, taking the facts in the light most favorable to Plaintiff, he

has sufficiently alleged that he had permission to remain in the bus station.  However,

the false arrest inquiry does not end at whether Chafin's assessment was correct, but

depends upon whether Chafin had probable cause to arrest Plaintiff.  *See Spalsbury v.*

*Sisson*, 250 F. App'x 238, 245 (10th Cir. 2007) ("[A] warrantless arrest by a law officer is

reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  "Probable cause to arrest exists if, the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense." *Id.*  Thus, even assuming that Plaintiff had permission to remain, Plaintiff's allegations establish only: "(1) that Burke explicitly told Chafin that plaintiff was trespassing; and (2) that plaintiff told Chafin that he had permission from the two Greyhound employees to remain . . . ."  (Doc. # 103 at 9-10.)

Plaintiff asserts that Judge Watanabe failed to appreciate Chafin's duty to conduct an independent investigation before arresting Plaintiff.  (Doc. # 109 at 9.)  While Plaintiff agrees that "the Recommendation correctly asserts that the appropriate inquiry as to the existence of probable cause begins with the knowledge of the arresting officer . . . ," Plaintiff contends that the "knowledge of the arresting officer" must include information gathered through an independent investigation.  (*Id.* at 8.)  After conducting the requisite investigation, Plaintiff contends, "no objectively reasonable officer could have concluded that there was probable cause to arrest [Plaintiff] for trespassing."  (*Id.* at 9.)  The Court disagrees.

"The inquiry depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest, where supported by reasonably trustworthy information."  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (internal quotation marks and citations omitted); *see also Spalsbury*, 250 F. App'x

at 245 ("In determining whether an officer had probable cause to make an arrest, we look objectively at the reasonable conclusions that could have been drawn based on the facts known to the officer at the time of the arrest.") (citing *Devenpeck*, 543 U.S. at 152-53).  Thus, the issue before the Court is whether Burke's statement to Chafin (1) constituted "reasonably trustworthy information" that (2) would have "warrant[ed] a person of reasonable caution" to believe that Plaintiff was trespassing.  *See Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011).

"[T]he Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."  *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995).  However, "[p]robable cause only requires a probability of criminal activity, not a prima facie showing of such activity."  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  Given Chafin's interview with Burke, a reasonable officer could have concluded that the permission for Plaintiff to remain at the bus station had been revoked.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1321 (10th Cir. 2002) (Hartz, J., concurring) ("Not only did the security officer have no apparent reason to lie, she had a strong motive to be restrained in accusing a customer of crime—both because of her employer's desire to keep customers and because of the potential liability to the security officer and her employer if the store's detention of the customer was unfounded.") (citing *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986).  Thus, Chafin had probable cause to

10

believe Plaintiff was trespassing, particularly when Chafin observed Plaintiff refusing to leave the premises when Burke asked Plaintiff to leave.

The independent investigation requirement in *Baptiste v. J.C. Penney Co.* does not undermine the Court's determination. *See* 147 F.3d 1252 (10th Cir. 1998). Pursuant to *Baptiste*, an officer must conduct an independent investigation where "the [security] guard's allegations added nothing to what the officers had the opportunity to view with their own eyes." *Id.* at 1257. Unlike the officers in *Baptiste*, there are no allegations that Chafin had access to an objective surveillance video showing Plaintiff's conduct. *See id.* Instead, Chafin had to make a judgment based on his interviews with Burke and Plaintiff. Indeed, "the arresting officer has no obligation to believe the suspect" when faced with conflicting stories. *Olsen*, 312 F.3d at 1321 (Hartz, J., concurring) (citations omitted).

Plaintiff also cites *Cortez*, 478 F.3d at 1118, and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), in support of the independent investigation requirement. These cases are distinguishable from the instant case. In *Cortez*, the officers based their arrest on "unsubstantiated double-hearsay originating from a two-year-old." 478 F.3d at 1118. The court reasoned that "standing alone, [the fact that this evidence] does not give rise to probable cause should have been patently obvious to any reasonable law enforcement official." *Id.* Conversely, it is not patently obvious that Burke's eye witness account was inadequate to establish probable cause. In *Lusby*, the officers arrested the plaintiff based on "a policy of not conducting any independent investigation before taking a person into custody who has been the subject of a citizens'

arrest." 749 F.2d at 1432.  The officers did not observe any conduct themselves and "did not interview **any** witnesses or conduct **any** inquiry to determine whether probable cause existed to arrest" the plaintiff.  *Id.* (emphasis added).  The instant case involved an arrest by officers who observed Plaintiff remaining on the premises after permission to remain had apparently been revoked.  Consequently, Plaintiff's contention that Chafin needed to complete a more thorough independent investigation is unavailing.  As such, Plaintiff has failed to state a false arrest claim.

## D.    MUNICIPAL LIABILITY PURSUANT TO § 1983

Judge Watanabe recommended that the Court dismiss Plaintiff's third claim for municipal liability.[7]  (Doc. # 103 at 13.)  Judge Watanabe reasoned that Plaintiff failed to state a claim under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), because he alleged only a single constitutional violation without alleging a policy from a municipal decision-maker.  (Doc. # 103 at 11-12.)

Plaintiff objects to Judge Watanabe's recommendation for two reasons.  First, Plaintiff argues that Judge Watanabe incorrectly recommended to dismiss Plaintiff's excessive force and false arrest claims and that Plaintiff "has more than adequately alleged numerous constitutional violations at the hands of the Denver Defendants." (Doc. # 109 at 12-13.)  As the Court has already addressed Plaintiff's excessive force and false arrest claims, the Court need not repeat that analysis here.  However, the

---

[7] The Court finds it necessary to reiterate that "the Court construes the first and second claims to be against only Defendants Garcia, Chafin, and Wyckoff in their individual capacities, while the third claim is against the City and Defendant Wyckoff."  (Doc. # 88 at 5.)  Thus, the Court will only consider Claim Three against Denver and Wyckoff.

Court will examine the impact of its determination that Plaintiff sufficiently alleged an excessive force claim.

Because the municipal liability still hinges upon a single incident of unconstitutional conduct, Plaintiff's objection that he has alleged "numerous instances of constitutional violations" is unavailing.  Judge Watanabe is correct that municipal liability under § 1983 requires an underlying constitutional violation by a city employee.  (Doc. # 103 at 10.)  Plaintiff's remaining claim is for excessive force by Chafin, Garcia, and Wyckoff.  While Plaintiff's objection asserts that the "police conduct in this case was standard operating procedure" (Doc. # 109 at 12), his Second Amended Complaint has failed allege the existence of a municipal policy.  Judge Watanabe correctly concluded that the existence of such a policy is requisite to support municipal liability for a § 1983 claim based on a single incident.  *See Jenkins v. Wood*, 81 F.3d 980, 994 (10th Cir. 1996); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  Therefore, Plaintiff's claim fails under *Monell*.

Second, Plaintiff objects that Judge Watanabe did not consider Wyckoff's supervisory liability based on Wyckoff's direct, personal involvement in the incident.  (*Id.* at 13.)  As the Court understands the Second Amended Complaint, Plaintiff asserts two distinct claims against Wyckoff.  Under Claim One, Plaintiff asserts that Wyckoff personally violated his rights by ignoring Plaintiff's complaints about his handcuffs.  Wyckoff did not seek dismissal of this claim for his direct role regarding Plaintiff's handcuffs.  *See* (Doc. # 62 at 5).  Thus, the Court need not address Wyckoff's direct liability at this juncture.

Under Claim Three, Plaintiff asserts that Wyckoff is liable for constitutional violations committed by Garcia and Chafin due to Wyckoff's failure to train/supervise those officers.  (*Id.* at 13.)  "A plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).  "[T]he plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'"  *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996).

Plaintiff contends that Wyckoff encouraged Garcia and Chafin to violate Plaintiff's rights through Wyckoff's behavior at the scene and his acceptance of Garcia and Chafin's behavior in his report.  (Doc. # 109 at 13.)  However, these assertions fail to allege the existence of a policy, informal or otherwise, responsible for the constitutional violation.  Moreover, Plaintiff has failed to establish the requisite causal connection.  *Dodds*, 614 F.3d at 1185 ("[T]he requisite causal connection [against a supervisory defendant] is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.") (internal quotation marks and citation omitted).  Wyckoff was not present for the events leading up to Plaintiff's arrest.  Aside from his conduct at the scene **subsequent** to Plaintiff's arrest, Wyckoff's supervisory conduct only involved condoning Garcia's and Chafin's conduct in his report.  Plaintiff has not

alleged specifics regarding why Denver's and Wycoff's supervision was inadequate or explained how the incident described in the Second Amended Complaint could have been avoided by better supervision or training. *See Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3, *4 (D. Colo. May 18, 2011) ("Mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not 'suffice to fasten liability on the city.'") (citation omitted). Without these explanations or allegations, Plaintiff has not stated a claim for failure to train/supervise against either Denver or Wyckoff. *See Jones v. Lehmkuhl*, No. 11-cv-02384-WYD-CBS, 2013 WL 6728951, at *15 (Dec. 20, 2013 D. Colo.) (noting there were "no well-pled facts that demonstrate specific deficiencies" in training); *Mott v. Officer John Does I*, No. 07-cv-00280-REB-CBS, 2008 WL 648993, at *5 (D. Colo. Mar. 4, 2008) ("[Plaintiff] has not alleged when Officers John Doe I and II were trained or how the training was inadequate."). Thus, the Court agrees with Magistrate Judge Watanabe that Claim Three should be dismissed.

## II.   CONCLUSION

Based on the foregoing, Plaintiff's objection (Doc. # 109) is OVERRULED IN PART regarding Claims Two and Three. It is

FURTHER ORDERED that the Recommendation of United States Magistrate Judge Michael J. Watanabe (Doc. # 103) is ADOPTED IN PART and REJECTED IN PART. It is ADOPTED insofar as it relates to Claims Two and Three, but REJECTED insofar as it relates to Claim One. It is

FURTHER ORDERED that Denver Defendants' Motion to Dismiss (Doc. # 62) is GRANTED IN PART and DENIED IN PART.  It is GRANTED insofar as Claims Two and Three are DISMISSED WITHOUT PREJUDICE.  The motion is DENIED in all other respects. It is

FURTHER ORDERED that in light of Plaintiff's voluntary dismissal of Claim Four (Doc. # 43 at 15), Denver Defendants' Motion to Dismiss Claim Four (Doc. # 62 at 14-15) is DENIED AS MOOT.

The only remaining claims are (1) excessive force for slamming Plaintiff's head against Defendants Chafin and Burke; (2) excessive force for excessively tight handcuffs against Defendants Garcia and Wyckoff; (3) conspiracy against Code-3 and Burke; (4) battery against Code-3 and Burke; (5) intentional infliction of emotional distress/outrageous conduct against Code-3 and Burke; (6) false imprisonment against Code-3 and Burke; and (7) negligence against Code-3.

DATED:  August 12, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge