**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01761-CMA-MJW

PHILIP WHITE,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,
ROBERT WYCKOFF, in his individual and official capacity,
KYLLION CHAFIN, in his individual and official capacity,
CODE-3 PROTECTION & SECURITY LLC, and
DANIEL BURKE,

    Defendants.

---

**ORDER GRANTING IN-PART AND DENYING IN-PART DEFENDANTS BURKE AND CODE-3'S MOTION FOR SUMMARY JUDGMENT AND DENYING OFFICER CHAFIN AND SERGEANT WYCKOFF'S MOTION FOR SUMMARY JUDGMENT**

---

Upon review of the parties' briefing and the evidence referenced therein, the Court grants the Motion for Summary Judgment (Doc. # 164) in favor of Defendants Burke and Code-3 on Plaintiff's assault and negligent training and supervision claims, but determines that genuine issues of material fact preclude it from granting summary judgment as to Plaintiff's battery, intentional infliction of emotional distress, and false imprisonment claims. Because Plaintiff presented sufficient evidence to raise triable issues as to whether Officer Chafin and Sergeant Wyckoff, who are not entitled to qualified immunity, violated his Fourth Amendment rights, the Court denies their Motion for Summary Judgment (Doc. # 200).

## I. BACKGROUND

**A. DENVER GREYHOUND STATION**

Plaintiff, who is approximately 5'4" and 140 pounds, is completely blind and uses a cane for mobility. (Doc. # 183 at 5, 8.) On May 22, 2012, Plaintiff entered the Denver Greyhound Station to take a bus from Denver to Vail, Colorado, but was informed that the bus was sold out. (Docs. ## 164 at 2; 200 at 2.) Because the manager claimed that Plaintiff became upset and loud when she did not offer him the option of staying at a hotel as Plaintiff claims she had done on a previous occasion, she called security. (Docs. ## 164 at 2– 3; 164-1 at 66:1–3.)

Defendant Burke, the Greyhound security guard, told Plaintiff he was trespassing, but Plaintiff refused to leave and, instead, called 911 to attempt to verify that he could remain in the terminal as the Greyhound manager had told him that he could. (Docs. ## 164-1 at 12:11–14; 183 at 7.) In response to Plaintiff's refusal to leave, Burke called the police and Denver Police Officer Chafin responded to the scene. (Doc. # 164 at 3.)

Although Officer Chafin identified himself as a police officer to Plaintiff, Plaintiff did not believe him because Plaintiff claims he had previously been victimized by an individual falsely claiming to be a police officer. (Docs. ## 200 at 5; 184 at 6.) At Plaintiff's request, Officer Chafin spelled his last name and told Plaintiff his rank and badge number. (Doc. # 200 at 6–7.) Plaintiff relayed this information to the police dispatcher, who informed Plaintiff that Officer Chafin, indeed, was a police officer. (*Id.* at 7.)

2

What happened next is disputed. Officer Chafin asserts he told Plaintiff he was going to be arrested and, thereafter, attempted to arrest him. (*Id.*) Officer Chafin claims that Plaintiff pulled away, grabbed his arms, and was resisting and fighting. (*Id.*) Plaintiff denies that he was resisting or fighting and alleges that he did not have the opportunity to turn and pull away, let alone grab Officer Chafin's arms, because, as soon as Officer Chafin grabbed his left arm, Burke grabbed his right arm, and the two propelled him forward, slamming his head into the ticket counter. (Doc. # 184 at 8.) Officer Chafin contends that Plaintiff resisted his orders to exit the bus terminal, but Plaintiff asserts that he was in pain and, without his cane, was immobile and could not judge how many people were around him. (Docs. ## 200 at 8; 184 at 8.)

The following facts are also not disputed. Officer Chafin escorted Plaintiff out of the bus terminal and, upon noticing that Plaintiff was bleeding from his forehead, requested an ambulance. (Doc. # 200 at 9.) Sergeant Wyckoff arrived at the bus terminal, and while conducting a videotaped interview of Plaintiff, Plaintiff indicated his handcuffs were too tight. (*Id.* at 10.) Specifically, Plaintiff told Sergeant Wyckoff, "I won't—probably never be able to read Braille again with this damn thing on this tight . . . This hand is totally numb. Totally numb." (Doc. # 184 at 15.) Sergeant Wyckoff looked over Plaintiff's shoulder and saw that Plaintiff was moving his hands and twisting his arms and wrists, which indicated to him that the handcuffs were not too tight. (Doc. # 200 at 10.) Sergeant Wyckoff ignored Plaintiff's pleas to loosen the handcuffs and did not check the tightness of the cuffs because he claimed "that was not [his] responsibility at the time." (Doc. # 184 at 15.)

On May 23, 2012, the personnel at Exempla St. Joseph Emergency Department who examined Plaintiff indicated that he had "normal motor strength, but head atraumatic." (Docs. ## 200 at 11; 184 at 16.) The personnel also revealed that Plaintiff had numerous injuries, including "B/I mild wrist swelling . . . sensation grossly intact but pt notes slighted decreased sensation of left thumb [and] abrasion to right side of forehead."[1] (Doc. # 184 at 16.)

**B.     CODE-3**

Defendant Burke learned of and applied for the security position with Code-3 via Craigslist. (Doc. # 183 at 10.) A week after Burke applied for the position with Code-3, Code-3's owner and sole manager interviewed him and hired him the next day. (*Id.*) Code-3's training of newly hired security guards, including Burke, took two to three hours to complete, and included "firearm certification, post orders at Greyhound bus terminal, security guard duties at Greyhound bus terminal, and scenario-based training." (*Id.*) Burke, who had been suspended from his previous job as a security supervisor with Denver Health, indicated on his application to Code-3 only that he left his previous position for "personal" reasons. (*Id.*)

## II.     STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*,

---

[1] Sergeant Wyckoff denies Plaintiff's claim and quotes additional language from Plaintiff's medical record. However, Plaintiff's quotation from his medical record is accurate. (Doc. # 201 at 34.)

259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.  DISCUSSION

**A.  DEFENDANTS BURKE AND CODE-3**

Defendants Burke and Code-3 contend that they are entitled to entry of summary judgment on each of Plaintiff's claims against them: (1) assault; (2) battery; (3) intentional infliction of emotional distress; (4) false imprisonment; and (5) negligent training and supervision.

**1.  Battery, Intentional Infliction of Emotional Distress, and False Imprisonment**

Upon review of the parties' briefing and the evidence referenced therein, the Court determines that genuine issues of material fact preclude the Court from granting the summary judgment motion as to Plaintiff's battery, intentional infliction of emotional distress, and false imprisonment claims.  However, the Court grants summary judgment in favor of Defendants on Plaintiff's assault and negligent training and supervision claims.

**2.  Assault**

Defendants Burke and Code-3 assert that Plaintiff's assault claim is based on the exact same conduct as the battery claim; therefore, it is merged into the battery claim.

To establish assault, the following elements must be proved: (1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive.  *Adams*

*v. Corr. Corp. of Am.*, 187 P.3d 1190, 1198 (Colo. App. 2008). The elements of battery are similar, except that the contact must have actually resulted. *Id.*

Plaintiff supports his assault claim by indicating that Burke grabbed his left arm "thus, placing [him] in reasonable apprehension of further physical contact (for example propelling his head into the countertop)." Because Plaintiff acknowledges that a contact actually resulted, a battery claim obviates the need for an assault claim in regards to the same incident. *See* 1 Am. Jur. Proof of Facts 3d 613 (1988) ("[O]nce bodily contact is made, the defendant is liable for a battery."); *Downtown Bar & Grill, Inc. v. Sphere Drake Ins.Co.*, No. 96 CIV. 6510, 1997 WL 188139, at *5 (S.D.N.Y. Apr. 17, 1997) ("All batteries are a completed assault and, thus, there would never be a case where both an assault and a battery would be the basis for the underlying claim."). Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claim of assault.

### 3. Negligent Training and Supervision

Plaintiff alleges a "negligence" claim against Code-3 on the basis that Code-3 breached its duty to him to adequately train and supervise its employees because: (1) Code-3 hired Burke despite knowing that he lied in his employment application; (2) Code-3 "interviewed, hired, and trained Burke on all aspects of providing security services in a public establishment in just 'two to three hours' in a single day"; and (3) Code-3 provided no follow-up training after Burke's initial day of hire. This Court construes this claim as a negligent training and supervision claim. Code-3 contends that Plaintiff's claim must be dismissed because Plaintiff has failed to show a causal nexus between these actions and the harm that befell him. The Court agrees.

To substantiate a claim for negligent training and supervision, a plaintiff must prove that the employer had a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm. *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005). Thus, the plaintiff must prove that "the employee's acts are 'so connected with the employment in time and place' such that the employer knows that harm may result from the employee's conduct and that the employer is given the opportunity to control such conduct." *Id.*

Plaintiff has not set forth specific facts showing that there is a genuine issue for trial as to whether it was reasonably foreseeable to Code-3 that Burke, who misrepresented his employment status, would cause harm while assisting with his arrest. Indeed, there is no connection between Code-3's alleged knowledge of Burke's misrepresentation of his employment status or its training methods and the harm Burke allegedly caused Plaintiff. Thus, Plaintiff has failed to state a claim against Code-3 for negligently training or supervising Burke.

In his response to Defendants' motion for summary judgment, Plaintiff attempts to circumvent dismissal of this claim by asserting a one sentence argument that Code-3 is also vicariously liable for the "negligence" of Burke:

> Additionally, to the extent that Defendant Burke acted negligently and within the scope of his security guard duties in causing Mr. White's injuries, Code-3 is vicariously liable for the negligence of its employee. *See Grease Monkey Int'l v. Montoya*, 904 P.2d 468, 473 (Colo. 1995).

Although the Court could refuse to consider Plaintiff's new theory on the grounds that it is outside the scope of the Amended Complaint, because there is no prejudice to Defendants, the Court will address his new claim on the merits. *See Lawmaster v.*

8

*Ward*, 125 F.3d 1341, 1346 n.2 (10th Cir. 1997) (refusing to consider claim not raised in complaint). Plaintiff's negligence claim is asserted only against Greyhound Lines, Inc. and Code-3. Plaintiff makes no claim of negligence against Defendant Burke. "[A]n employer cannot be liable under the doctrine of *respondeat superior* unless the employee is liable, i.e., the employer's liability is only derivative in nature." *Arnold By & Through Valle v. Colorado State Hosp., Dep't of Institutions*, 910 P.2d 104, 107 (Colo. App. 1995). Because Plaintiff did not allege that Burke, Code-3's employee, was negligent, Code-3 cannot be found to be negligent based on vicarious liability.

Accordingly, for the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims of assault and negligent training and supervision.

**B.     OFFICER CHAFIN AND SERGEANT WYCKOFF**

Officer Chafin and Sergeant Wyckoff contend that summary judgment is appropriate on Plaintiff's 42 U.S.C. § 1983 claim and that they are entitled to qualified immunity.

Under the doctrine of qualified immunity, government officials are protected from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121

9

(2001). Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). In determining whether an officer is entitled to qualified immunity, the Court generally applies the two-step test set forth in *Saucier*.

First, the Court must answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. Second, the court asks whether the right was clearly established at the time of the alleged violation, i.e., whether it would have been clear to a reasonable officer that his conduct was unlawful under the circumstances presented. *Id.* at 201–02. If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)).

To establish a constitutional violation at the first step, a plaintiff must demonstrate the force used by an officer was objectively unreasonable. *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). There is no clear-cut, "easy-to-apply" legal test for whether an officer's use of force is excessive; instead, courts must "slosh [their] way through the fact-bound morass of 'reasonableness.'" *Cordova v. Aragon*, 569 F.3d

1183, 1188 (10th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)). This requires the Court to weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* In determining whether the use of force was reasonable, then, the Court must pay careful attention to the totality of facts and circumstances in the particular case, including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether he actively resisted arrest or attempted to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Additionally, as a general matter, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This is because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Saucier*, 533 U.S. at 205 (citing *Graham*, 490 U.S. at 397).

Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The question of whether a right is clearly established must be addressed in light of the specific context of the case. *See id.* That is, the question is not whether there exists a general right to be free from excessive force, but whether Plaintiff had a clearly established right under the facts of this case. *See Morris*, 672 F.3d at 1196. "Ordinarily," for a rule to be clearly

11

established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

In this case, Plaintiff, who is small, elderly, and blind, alleges that Officer Chafin and Sergeant Wyckoff violated his Fourth Amendment rights by using excessive force against him. Specifically, Plaintiff claims that Officer Chafin slammed his head into the ticket counter causing a laceration and contusion to his forehead, which resulted in blood streaming down his face, and Sergeant Wyckoff used excessively tight handcuffs on him and ignored his pleas to loosen the handcuffs.

Based on the totality of the circumstances surrounding this incident, the Court finds that the *Graham* factors weigh heavily in Plaintiff's favor. At the time Officer Chafin and Sergeant Wyckoff applied force, Plaintiff was guilty only of alleged trespass, a minor misdemeanor. Based on Plaintiff's characteristics, he did not pose an immediate threat to the safety of the officers or others. Plaintiff is blind and did not have his cane so he, most certainly, was not attempting to flee, although there is some dispute as to whether he actively resisted arrest. Pursuant to the *Graham* factors, Plaintiff has presented sufficient evidence to raise triable issues as to whether Officer Chafin and Sergeant Wyckoff violated his Fourth Amendment rights.

With regard to the second qualified immunity prong, the Court concludes that, at the time Officer Chafin arrested Plaintiff, Plaintiff's right to be free from excessive force, under objective standards of reasonableness, was clearly established. In *Buck v. City*

12

*of Albuquerque*, the Tenth Circuit held that it was "clearly established" that police officers could use only minimal force to effectuate the arrest of a person suspected of a minor offense, who posed no threat to the safety of the officers, and who made no attempts to flee or resist arrest. 549 F.3d 1269, 1291 (10th Cir. 2008). Based on the facts, interpreted in the light most favorable to Plaintiff, it was clearly established that Officer Chafin could use only minimal force to arrest Plaintiff, as such Officer Chafin is not entitled to qualified immunity.

Likewise, Plaintiff's right to be free from excessively tight handcuffs is also a clearly established right. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008) ("In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight.") (citation omitted). Plaintiff alleges that he complained to Sergeant Wyckoff that his handcuffs were too tight and that Sergeant Wyckoff ignored his timely complaints, which resulted in actual injury to him. As such, Sergeant Wyckoff is not entitled to qualified immunity.

Because the Court has determined that pursuant to the *Graham* factors, Plaintiff has presented sufficient evidence to raise triable issues as to whether Officer Chafin and Sergeant Wyckoff violated his Fourth Amendment rights, his Fourth Amendment claims survive summary judgment.

## IV. CONCLUSION

The Court DENIES Defendants Burke and Code-3's Motion for Summary Judgment (Doc. # 164) with respect to Plaintiff claims of (1) battery; (2) intentional infliction of emotional distress; and (3) false imprisonment. The Court GRANTS Burke and Code-3's Motion with respect to Plaintiff's claims of assault and negligent training and supervision. It is

FURTHER ORDERED that Officer Chafin and Sergeant Wyckoff's Motion for Summary Judgment (Doc. # 200) based on qualified immunity is DENIED. It is

FURTHER ORDERED that Docs. ## 161 and 163 are DENIED AS MOOT.

DATED: August 12, 2015

BY THE COURT:

*Christine M. Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge